UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRAND MATTER, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>MODERN SHOE COMPANY, LLC,<br><br>    Defendant. | Index No. _____<br><br>**COMPLAINT** |

Plaintiff Brand Matter, LLC ("BM"), by its undersigned attorneys, Golenbock Eiseman Assor Bell & Peskoe LLP, on knowledge as to its own status and actions and otherwise upon information and belief, alleges for its Complaint against defendant Modern Shoe Company, LLC ("Modern Shoe"), as follows:

### NATURE OF THE ACTION

1. This action arises from Modern Shoe's breach of a license agreement with BM. Under the agreement, which was effective as of July 13, 2006, and renewed and/or amended on March 12, 2009, October 20, 2009, May 10, 2010, and July 31, 2012, BM granted Modern Shoe a license to use specified trademarks and a domain name in connection with the sale by Modern Shoe of certain apparel and accessories. Modern Shoe breached the license agreement by, *inter alia*, failing to pay BM guaranteed minimum royalties. BM thereafter terminated the license agreement pursuant to its terms and now seeks to recover from BM $963,750 in unpaid guaranteed minimum royalties for 2015 and $6,750,000 in guaranteed payments due through the end of the contract term.

## PARTIES

2. Plaintiff BM is a limited liability company duly organized and existing under the laws of the State of Delaware. BM maintains business offices at 601 West 26th Street, 9th Floor, New York, New York 10001. SQBG, Inc. is the sole member and manager of BM. SQBG, Inc. is a Delaware corporation that maintains its business offices at the same New York, New York location as BM.

3. Defendant Modern Shoe is a limited liability company duly organized and existing under the laws of Delaware. Modern Shoe maintains a principal place of business at 101 Sprague Street, Hyde Park, Massachusetts 02136. Upon information and belief, each of the members of Modern Shoe resides in Massachusetts. The managers of Modern Shoe are Mark Cocozza and Kimberly Bradley; each resides in Massachusetts.

## VENUE AND JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between BM and Modern Shoe, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in the Southern District of New York, pursuant to Section 21.1(c) of the license agreement at issue, which provides as follows: "Licensor and Licensee hereby (i) agree that the State and Federal courts sitting in the State and City of New York have exclusive jurisdiction in any action arising out of or connected in any way with this Agreement; [and] (ii) each consent to personal jurisdiction of and venue in such courts in any such manner . . . ."

## FACTUAL ALLEGATIONS

6. Effective July 13, 2006, L.C. Licensing, Inc., the predecessor-in-interest of BM, entered into a license agreement (the "License Agreement") with Modern Shoe relating to

3

the "Ellen Tracy Collection" trademark, the "Ellen Tracy" trademark, and various other composite marks (the "Trademarks"). A true and correct copy of the License Agreement is annexed hereto as Exhibit 1.

7. The initial term of the License Agreement was from July 13, 2006 through December 31, 2009 (the "Initial Term"). (*See* License Agreement, Section 3.1(a) and Schedule 3.1(a).) The License Agreement provided for an optional renewal term. (*Id.* Section 3.1(b).)

8. The License Agreement granted Modern Shoe an exclusive right and license to use the Trademarks in the United States, Mexico, and Canada in connection with the marketing and sale by Modern Shoe of women's footwear bearing the Trademarks (the "Merchandise"). (*See* License Agreement, Section 2.1(a), Schedule 1.1.)

9. Under the License Agreement, Modern Shoe agreed, among other things, to (a) sell the Merchandise to approved customers (*id.* at Section 2.1(a)), (b) deliver to BM quarterly, annual, and additional sales statements ("Reporting Requirements") (*id.* at Section 11.1(b), 11.5, Schedule 11.5), (c) pay guaranteed minimum royalties ("Guaranteed Minimum Royalties") to BM (*id.* Section 8, Schedule 8), and (d) pay contributions toward BM advertising and marketing expenditures ("Image Fund Payments") (*id.* Section 7.2(b), Schedule 7.2).

10. The License Agreement set minimum net retail sales ("Minimum Net Sales") for each of the four contract years that comprised the Initial Term (each a "Contract Year"). The First Contract Year was from July 13, 2006 to December 31, 2006; the Second Contract Year was from January 1, 2007 to December 31, 2007; the Third Contract Year was from January 1, 2008 to December 31, 2008; and the Fourth Contract Year was from January 1, 2009 to December 31, 2009. (*See* License Agreement, Section 1.9 and Schedules 1.8 & 3.3(g).)

11. Based on these Minimum Net Sales numbers, the License Agreement set the Guaranteed Minimum Royalties for each Contract Year. (*See* License Agreement, Section 8.1.) The License Agreement also set Guaranteed Minimum Royalties for each Contract Year of the optional renewal term. (*Id.* Schedule 8.)

12. The License Agreement specified the amount of the Image Fund Payments for each Contract Year, and provided that no Image Fund Payments would be due in Contract Years in which BM did not have at least one national ad campaign or fashion show. (*See* License Agreement, Schedule 7.2.)

13. By letter dated March 12, 2009 (the "First Renewal"), BM and Modern Shoe renewed the term of the License Agreement for an additional five years from January 1, 2010 to December 31, 2014 (the "Renewal Term"). A true and correct copy of the First Renewal is annexed hereto as Exhibit 2.

14. By amendment dated October 20, 2009 (the "First Amendment"), BM and Modern Shoe amended the License Agreement to extend the Renewal Term to December 31, 2016 (the "Second Term"). The letter also amended the Guaranteed Minimum Royalties and Image Fund Payments for the Second Term. A true and correct copy of the First Amendment is annexed hereto as Exhibit 3.

15. The First Amendment set the Guaranteed Minimum Royalties for the Second Term at $480,000 for 2009, $720,000 for 2010, $780,000 for 2011, $840,000 for 2012, $900,000 for 2013, $900,000 for 2014, $930,000 for 2015, and $930,000 for 2016. (*See* Ex. 3, Schedule 8.)

5

16. The First Amendment also set the Image Fund Payments for the Second Term at "The greater of $120,000 of 1% of prior year's aggregate Net Sales." (*See* Ex. 3, Schedule 7.2.)

17. By letter dated July 31, 2012 (the "Second Renewal"), BM and Modern Shoe renewed the License Agreement for the period of January 1, 2017 to December 31, 2021 (the "Third Term"). A true and correct copy of the Second Renewal is annexed hereto as Exhibit 4.

18. The Second Renewal set the Guaranteed Minimum Royalties for the Third Term at $960,000 for 2017, $990,000 for 2018, $1,020,000 for 2019, $1,050,000 for 2020, and $1,080,000 for 2021. (Ex. 4 at 1.)

19. Pursuant to the First Amendment, the Image Fund Payments for the Third Term were set at "The greater of $120,000 of 1% of prior year's aggregate Net Sales." (*See* Ex. 3, Schedule 7.2.)

20. Modern Shoe has breached the License Agreement by, *inter alia*, failing to pay Guaranteed Minimum Royalties to BM for 2015.

21. On or about November 18, 2015, based on Modern Shoe's continuing breach of the License Agreement, as amended, and failure to cure same, Modern Shoe was put on written notice of its default under the License Agreement based on Modern Shoe's failure to pay Guaranteed Minimum Royalties of $637,105 for 2015.

22. Based on Modern Shoe's continuing breach of the License Agreement and failure to cure same, on or about February 23, 2016, pursuant to Section 3.5 of the License Agreement, Modern Shoe was provided a letter terminating the License Agreement effective as of February 23, 2016. The termination letter asserted that Modern Show owed BM $963,750 in

2477646.3

unpaid past due royalties and $6,467,500 for the balance of all remaining unpaid guaranteed minimum royalties and image fund payments.

23. The total amount owing to BM by Modern Show under the License Agreement is no less than $7,713,750, (which includes all unpaid Guaranteed Minimum Royalties and Image Fund Payments for 2015, 2016, and each year of the Third Term), plus interest at the rate set forth in Section 11.2 of the License Agreement.

### FIRST CAUSE OF ACTION
### FOR BREACH OF CONTRACT/DAMAGES

24. BM incorporates every allegation contained in paragraphs 1 through 23 as if repeated herein.

25. The License Agreement is a valid and enforceable agreement between BM and Modern Shoe.

26. BM has performed all of its obligations under the License Agreement.

27. Modern Shoe has breached the License Agreement by, *inter alia*, failing to make payments due thereunder, including, without limitation, unpaid Guaranteed Minimum Royalties of $963,750 for 2015, plus $6,750,000 in unpaid Guaranteed Minimum Royalties and Image Fund Payments for 2016 and the Third Term, plus interest as provided in the License Agreement.

28. As a result of Modern Shoe's breaches of the License Agreement, BM has suffered damages in an amount to be determined at trial, but not less than $7,713,750, exclusive of interest.

### SECOND CAUSE OF ACTION
### FOR DECLARATORY JUDGMENT

29. BM incorporates every allegation contained in paragraphs 1 through 33 as if repeated herein.

30. Modern Shoe breached the License Agreement, as set forth above, and the License Agreement was therefore terminated by BM pursuant to the terms thereof as of February 23, 2016.

31. Upon termination, Modern Shoe is prohibited from further use of the Trademarks. (*See* License Agreement, Section 12.1(a).)

32. There is a justiciable, actual, real, and substantial controversy between BM and Modern Shoe, and BM seeks a declaration of its legal rights.

33. Specifically, BM seeks a declaration that: (i) the License Agreement was lawfully terminated by BM as of February 23, 2016; and that (ii) Modern Shoe has no rights or interest in the Trademarks.

**WHEREFORE**, BM respectfully requests that judgment be entered in its favor:

(A) awarding BM actual and consequential damages in an amount to be determined, but in no event less than $7,713,750, plus interest;

(B) declaring that: (i) the License Agreement was lawfully terminated by BM as of February 23, 2016; and that (ii) Modern Shoe has no rights or interest in the Trademarks; and

(C) granting BM any such further relief as the Court deems just and proper, including, but not limited to, pre-judgment interest and post-judgment interest.

2477646.3

Dated: New York, New York  
April 21, 2016

GOLENBOCK EISEMAN ASSOR BELL& PESKOE LLP

By: _____
S. Preston Ricardo (SPR 5765)

437 Madison Avenue, 35th Floor  
New York, New York 10022  
(212) 907-7300

*Attorneys for Plaintiff Brand Matter, LLC*

2477646.3